SIDNEY K. JOHNSON, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 19575.)

Court of Claims, December 11, 1939.

*Ward N. Truesdell*, for the claimant.

*John J. Bennett, Jr.*, Attorney-General [*Joseph I. Butler*, Assistant Attorney-General, of counsel], for the defendant.

FRED M. ACKERSON (Official Referee acting as judge). This is a motion to set aside the judgment in favor of the claimant herein and for the reopening of the trial of said claim on the ground that

this court did not and has not jurisdiction to hear, try and determine the claim.

The above-named claimant, on or about November 15, 1928, entered into a contract with the defendant to install sewer and water connections on the State Armory site at Oneida, Madison county, N. Y. The claimant then proceeded and performed the work called for in the contract. He received his final payment on said contract from the county treasurer of Madison county on December 11, 1929. This payment was made in accordance with a requisition on Madison county by the State of New York as represented by its Adjutant-General, which requisition was received by the board of supervisors of Madison county on November 27, 1929, as appears from the letter of Mary E. Brophy written in behalf of the Madison county board of supervisors at Wampsville, N. Y., to Assistant Attorney-General Behan on March 8, 1939, which letter is attached to the moving papers herein.

On April 2, 1930, said claimant filed a claim with this court against the State for damages alleged to have been suffered in the performance of the aforementioned contract owing to the negligent and wrongful acts of the defendant, its agents, servants and employees and particularly in reference to such acts in laying out the work.

The said claim was tried at a term of this court held in the Onondaga county court house in February, 1931, before the writer, one of the judges of this court. The attorneys for the respective parties did not file their written briefs and requests to find and finally submit the claim to the court for decision until 1938.

Thereafter this court made an award in favor of the claimant in the sum of $1,184.64, without interest, upon which judgment was duly entered herein on December 16, 1938. Thereafter, by an order of the court dated February 20, 1939, the judgment was amended allowing interest on the amount awarded as damages from the date of the final payment that had been made on the contract to the claimant.

Now the Attorney-General comes into court, says that he has discovered that the payments on this contract were made by the county of Madison instead of the State of New York, that the contract, if it, in fact, can be called such, is illegal, and that the county of Madison is liable to the claimant for his alleged damages and not the State of New York, if anybody, is liable.

It seems to us that this is a strange contention for the Attorney-General to make at this time. The claimant has no cause of action against the county of Madison. The contract in question is between the claimant and the State of New York. The promise to pay

was made by the State. The work was performed on State property under the supervision and direction of the agents of the State. The damages were caused because of the acts of the officers, servants and agents of the State. The county of Madison was not privy to the contract and had no contractual relations with the claimant.

Under the law of this State a State armory such as was and is the one in question at Oneida, together with the real property connected with it, was and is the property of the State of New York, in which the title to the same is vested by statute.

No person or body has any authority to incur any expense for or in connection with such a property except the State itself through the office of the Adjutant-General or some agent of his with his approval.

Boards of supervisors are authorized under the law to purchase real estate for the site of an armory when requested to do so by State authority and the title to such property is vested in the State and not in the county. They have absolutely no discretion in the matter because whether they act or not the State can go right ahead and procure the property needed.

The county treasurer is made the disbursing officer for certain funds in connection with armories under the supervision of the Adjutant-General and State Comptroller, but nobody except the State itself, through the Adjutant-General's Department, has any authority to let any contract in connection with the armory or the grounds on which it stands.

The county in which an armory is located or the counties of the military district among which the expense may be apportioned by the Department of Taxation and Finance upon the certificate of the Adjutant-General have to pay all the expenses connected with the purchase of the site and the erection and maintenance of the armory. The counties, however, have nothing to do with the ordering or contracting for such expenditures. All of that is entirely within the jurisdiction of the State alone.

All debts so incurred are in the first instance obligations of the State and the creditor has no recourse except as against the State as it, only, incurred the debt. The fact that in the scheme of State financing as provided by law the county must pay such debts when called upon to do so by the State in no way makes the county directly responsible to the creditor.

The county has no power to question any indebtedness incurred in such matters by the State and simply must pay the amount called for when certified by proper State authority as the Military Law provides.

It would seem to be axiomatic that as the property in question was owned by the State the county would have no authority to send a contractor on it for any purpose except as ordered by the State and, therefore, could not become directly liable for any work so performed.

The contract which Johnson entered into with the State has printed right on its front cover these words: " Sewers and Water Connections State Armory Site, Oneida, Madison County, N. Y."

It was executed by Johnson, the claimant, and by " F. W. Ward, Division of Military and Naval Affairs." Ward was then the Adjutant-General of the State and the head of that department and authorized by law to execute such contracts on behalf of the State. The contract was approved by the Attorney-General, by the Adjutant-General and by the Chief Engineer of the Department of Public Works. It was not approved by the Comptroller it is true but our attention has not been called to any statute which required it.

It is our conclusion, therefore, that the work in question was performed by the claimant on State property under a valid contract with the State; that his damages resulted from the acts of the servants and agents of the State and that his cause of action was and is against the State and not the county of Madison.

The fact that under the law the county of Madison was compelled to and did pay the cost of the improvements in question when called upon to do so by the Adjutant-General in no way relieved the State from its obligations under its contract with this claimant.

The motion by the defendant herein as above set forth, therefore, should be and is hereby denied and an order to that effect may be prepared and submitted to the court for signature.

BARRETT, P. J., concurs.