## JOHN McSHAIN, INC. *v.* COMPTROLLER

[No. 103, October Term, 1952.]

*Decided March 19, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Joseph B. Simpson,* with whom were *Vivian V. Simpson, Simpson & Simpson* and *F. J. Rice,* on the brief, for appellant.

*Francis D. Murnaghan, Jr.,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, and *Edward F. Engelbert,* Assistant Director, Retail Sales Tax Division, Office of Comptroller, on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Montgomery County affirming the Comptroller's denial of a claim for refund of sales and use taxes. The appeal was duly taken under Section 348, Article 81, Code of 1951, on a question of law only. The facts are undisputed.

Between August, 1935 and March, 1942, two residents of Montgomery County, Mr. and Mrs. Wilson, donated to the United States of America valuable tracts of land in Bethesda, Montgomery County, Maryland, for the erection thereon of buildings for the use of the National Institute of Health. The gifts were duly accepted and adjoining land was acquired by the United States by condemnation. Under Title 42, Sections 23a-23e, U. S. C. A., the National Institute of Health had been established, and the Secretary of the Treasury (later the Federal Security Administrator) was authorized to accept gifts "for study, investigation, and research in the fundamental problems of the diseases of man and matters pertaining thereto, and for the acquisition of grounds or for the erection, equipment and maintenance of buildings and premises". It was also provided that "the facilities of the institute shall from time to time be made available to *bona fide* health authorities of States, counties, or municipalities for purposes of instruction and investigation."

In 1949, the appellant, a builder, entered into a lump-sum contract with the United States of America, through

the Public Buildings Administration, for the erection of a clinical building on the lands so acquired, to be operated by the National Institute of Health. The State Comptroller demanded payment by the appellant of sales and use taxes on materials and supplies incorporated in the building, and refused to grant refund thereof.

Section 320(f)(3), Article 81, Code of 1951, defines a sale at retail to include "The sale of building materials to contractors, builders, or landowners for use or resale in the form of real estate." Section 368(d) of the same Article defines use to include "the receipt, storage, keeping or retention for any length of time of any building materials by any contractor, builder, or property owner." Clearly these sections are broad enough to cover the materials and supplies in the instant case, but the appellant relies upon the exemption contained in Section 322(i), Article 81, Code of 1951, which provides that the tax shall not apply to "Sales to any person operating a non-profit religious, charitable, scientific, literary or educational institution or organization situated in this State when such tangible personal property is purchased for use in carrying on the work of such institution or organization." Section 370(b) adopts the same exemption for the use tax by reference. "In this State" is defined in Section 368(1) to include territory within the exterior limits of the State owned by the United States of America.

The appellant also relies upon Rule 70, promulgated by the Comptroller on June 1, 1949, pursuant to the power, conferred by Section 361(a) of the Article, "to make, adopt and amend such rules and regulations as he shall deem necessary to carry out the provisions of this sub-title and to define any terms used herein." Rule 70 reads: "Contractors who are performing jobs for the State of Maryland or any of its political subdivisions or a non-profit religious, charitable, scientific, literary or educational institution or organization on a lump-sum basis are not required to pay the tax on materials and supplies which will be incorporated into the job. No

exemption certificates will be issued by the Comptroller to cover such purchases. The contractor shall present to his supplier the contract designation or number as his authority for making tax free purchases of materials and supplies to complete such contracts.

"The contractor must pay the tax on all equipment which he purchases even though it may be used on a job for one of the aforementioned persons.

"Contractors who are working on lump-sum, *cost plus a fixed fee, or cost plus contracts containing an upset or guarantee clause* with the Federal Government must pay the tax on all personal property which they purchase in fulfilling such contracts." The words in italics were added by amendment effective June 15, 1950.

We think it is clear that the National Institute of Health, although an agency or arm of the Government, may fairly be described as "operating a non-profit * * * charitable, scientific * * * or educational institution or organization situated in this State." We also think that tangible personal property purchased by a person operating such an activity may be said to be "for use in carrying on the work of such institution or organization" even though such property is incorporated into a new building, and not merely an expendable or operating item. It is true that the word "person" is not ordinarily construed to inlcude a sovereign state or the federal government, but the statute here contains a very broad definition of "person" in Section 320(a) and Section 368(a) to include anyone acting in a "fiduciary or representative capacity", and the stress is on the use or purpose, not upon the status of the operating means. It may be noted that the Comptroller's regulation refers to the State as one of the "aforementioned persons" in paragraph 2. The State and its political subdivisions were specifically exempted under Section 322(a).

The most serious objection to the allowance of the exemption is that the section, in terms, applies to sales made directly to the person operating, and not to a contractor with such person. We think, however, that

it would be a strained construction to hold that persons operating the activities mentioned should be entitled to the exemption when they purchase directly from a supplier, but not when they acquire the property through an intermediary contractor. The Comptroller's regulation is very specific on the point, and while it is conceded that the Comptroller lacks the power to create an exemption beyond that granted by the statute, his interpretation is entitled to great weight as an administrative construction acquiesced in by the legislature. *Cf. Tidewater Fisheries v. Sollers,* 201 Md. 603, 95 A. 2d 306, just decided, and cases there cited. Since 1949, there must have been a considerable volume of new construction for hospitals and other institutions within the exempted classes who have received the benefit of the exemption. We are not prepared to say that the Comptroller was wrong in failing to collect the sales tax on items of personal property going into these buildings or additions merely because they were contracted for rather than built by the owners. To now hold that all such transactions were taxable would subject many persons to tax claims on transactions completed in good faith in reliance upon the administrative ruling .

The Attorney General argues that if the Comptroller's regulation is to be given effect as a correct interpretation of the statute on this point, it should likewise be given effect as limiting the exemption to cases where the contractor is not working for the federal government. In this respect, however, we think the Comptroller's interpretation is incorrect. We may assume that the State has the power to collect the tax from contractors with the federal government, and that the statute is designed to reach items going into buildings devoted to federal purposes generally. But we are here dealing with a particular use which the legislature has seen fit to exempt. It is true that an exemption statute must be strictly construed, but neither should it receive a strained or unreasonable construction that would defeat the purpose of the legislature. *Shaughnessy v. Linguistic Soc.*

*of America,* 198 Md. 446, 450, 84 A. 2d 68, 70. The controlling factor upon which the exemption is based is not the instrumentality that does the purchasing, but the use of the items purchased in carrying on in Maryland the work to be promoted. *Cf. Morning Cheer v. Co. Commissioners,* 194 Md. 441, 446, 71 A. 2d 256, distinguishing *Clarke v. Union Trust Co. of D. C.,* 192 Md. 127, 63 A. 2d 635. We think it is quite immaterial that the activity is conducted by a federal agency, rather than by a private agency or by the State. Indeed, it may be questioned whether the regulation was ever intended to draw such a distinction. If read together, both the first and third paragraphs can be given effect.

The exemption recognized in the first paragraph depends upon the use to which the property is put, and not upon the immunity of the user, even though such immunity does not extend to its contractors under other circumstances. *Cf. Alabama v. King & Boozer,* 314 U. S. 1, 62 S. Ct. 43, 86 L. Ed. 3, and *Curry v. U. S.,* 314 U. S. 14, 62 S. Ct. 48, 86 L. Ed. 9. Nor is it material that all activities of the federal government are considered governmental in determining the scope of its immunity, since the exemption is predicated upon the use and not upon the immunity.

Since it is our conclusion that, by a proper construction of the statute, the contractor in the instant case is not liable for the sales and use taxes imposed, it is unnecessary to discuss the constitutional points raised and argued.

*Order reversed, with costs.*