JAMES McHUGH CONSTRUCTION COMPANY *v.*
COMPTROLLER OF THE TREASURY,
RETAIL SALES TAX DIVISION

[No. 57, September Term, 1980.]

*Decided July 17, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*John V. Long,* with whom were *Oliver Denier Long* and *John V. Long, P.A.* on the brief, for appellant.

*Paul S. Sugar, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for · appellee.

DAVIDSON, J., delivered the opinion of the Court.

This case presents the question whether a 1968 amendment to Maryland Code (1957, 1980 Repl. Vol.), Art. 81, § 326 (a) conflicts with Art. XVI-78 of the Washington Metropolitan Area Transit Authority (WMATA) Compact, Maryland Code (1977, 1980 Repl. Vol.) § 10-204 of the Transportation Article.[1]

Maryland, Virginia and the District of Columbia entered into the Compact[2] for the purpose of regulating transit on a coordinated basis throughout the area by establishing a

---

1. The WMATA Compact, adopted and codified in 1965 as Md. Code (1957, 1965 Repl. Vol.), Art. 41, § 317-1 through § 317-86, constituted Title III of the Washington Area Transit Regulation Compact (WATRC), adopted and codified in 1959 as Art. 41, § 268 through § 317. In 1977, WATRC was recodified as Md. Code (1977, 1980 Repl. Vol.) § 10-203 of the Transportation Article and the WMATA Compact was recodified as § 10-204 of the Transportation Article. No substantive changes were made at the time of the recodification. *See* Revisor's Notes to § 10-203 and § 10-204.

2. Throughout this opinion, the term "Compact" includes both the WATRC Compact, § 10-203, and the WMATA Compact, § 10-204.

common agency designed to alleviate transit and traffic problems in the metropolitan area. The Compact declared that the Authority was created for a public purpose and should not be required to pay taxes upon any property acquired by it. § 10-204, Art. XVI-78. In addition, it provided that the signatory states' power to levy and collect taxes upon any material, equipment, or supplies purchased by any company subject to the Compact was not affected. § 10-203, Art. VII.

At the time the WMATA Compact was adopted in 1965, the Retail Sales Tax Act, Art. 81, § 324 through § 371, contained an exemption for the State of Maryland. Article 81, § 326 (a) provided:

"The tax hereby levied shall not apply to the following sales:

(a) State sales. — Sales to the State of Maryland or any of its political subdivisions."

Tax Laws and Regulations, Rule 70, promulgated by the Comptroller of the Treasury, then provided that contractors performing jobs for the State were not required to pay a sales tax on materials and supplies to be incorporated into the job.[3]

In 1968, Art. 81, § 326 (a) was amended (1968 Amendment) to subject previously exempt contractors to a sales tax on property to be used for the construction, repair, or alteration of real property owned by the State of Maryland. As amended, § 326 (a) provides:

"The tax hereby levied does not apply to the following sales:

(a) State sales. — Sales to the State of Maryland or any of its political subdivisions. *Provided that*

---

3. Rule 70 provided in pertinent part:

"Contractors who are performing jobs for the State of Maryland or any of its political sub-divisions or a non-profit religious, charitable, scientific, literary or educational institution or organization located within the State of Maryland on a lump-sum basis are not required to pay the tax on materials and supplies which will be incorporated into the job."

*this subsection shall not be construed or applied to exempt any sale, otherwise taxable* under this subtitle, of tangible personal property *to contractors or builders* to be used for the construction, repair or alteration of real property, on contracts advertised for bids after July 1, 1968." (Emphasis added.)

In 1968, Rule 70 was amended to provide that contractors performing jobs for the State of Maryland must pay a sales tax on all of their purchases. Tax Rules and Regulations, Rule 70; Rule 70A.[4]

---

4. Amended Rule 70 provides:

"Contractors and subcontractors performing construction contracts for the State of Maryland or any of its political subdivisions or the U.S. Government or its agencies, under contracts which are bid after July 1, 1968, must pay the tax on all their purchases."

Rule 70A provides in pertinent part:

"Contractors and subcontractors performing construction contracts for non-profit religious, charitable or educational institutions or organizations for use in carrying on the work of the non-profit institution or organization may purchase tax free the materials which will actually be incorporated into and remain a part of the finished job. Nothing in this Rule 70A shall apply to contracts with Federal, State or Local Governments or Agencies."

COMAR 03.06.01.53, effective 1977, provides in pertinent part:

"A. The sale of tangible personal property to a person who will use or resell it in the form of real property is taxable. Therefore, a person who constructs, improves, alters, or repairs real property shall pay the tax on all materials he purchases, which will be incorporated into real property in such a manner that the materials will lose their identity as tangible personal property.

. . .

D. A person who, because of a contractual obligation, purchases material which will be incorporated into the real property of a private, non-profit religious, charitable, or educational organization . . . may . . . purchase the material tax-free.

. . .

E. The exemption for the purchase of building material described above applies only when the final recipient of the material is a private, non-profit religious, charitable, or educational organization . . . as described by Article 81, § 326 (i), Annotated Code of Maryland. . . . [P]urchases of material which will be incorporated into the real property of the State of Maryland, including its political subdivisions, the U.S. Government, including its agencies and instrumentalities, diplomatic embassies, or credit unions, are subject to tax."

In 1974, the petitioner, James McHugh Construction Company (contractor), entered into a contract with WMATA to construct a portion of a subway system located in Bethesda, Maryland. Thereafter, the contractor paid sales tax on all materials incorporated into the subway structure.

The contractor filed various claims for the refund of the paid sales tax. The Comptroller of the Treasury denied the claims and, on appeal, the Maryland Tax Court affirmed that decision. The Circuit Court for Montgomery County affirmed. The contractor appealed to the Court of Special Appeals. Before that court considered the case, the contractor filed a petition for a writ of certiorari that we granted. We shall affirm.

The contractor contends that a state that is a party to an interstate compact may not unilaterally amend its laws to conflict with the terms of that compact. It initially points out that the express language of § 10-204, Art. XVI-78 provides an exemption for the Authority from sales tax on property acquired by it to be used for a public purpose. Relying on *John McShain, Inc. v. Comptroller,* 202 Md. 68, 95 A.2d 473 (1953), the contractor maintains that because the Authority was entitled to an exemption from sales tax on materials that it acquired directly for the public purpose of constructing a subway, the contractor, too, was entitled to an exemption from sales tax on materials that it acquired for the Authority for that purpose. Thus, the contractor asserts, in essence, that under the terms of the Compact, it was entitled to be exempt from a sales tax on all materials incorporated into the subway structure. The contractor concludes that the 1968 Amendment, which deprived it of its previous exemption and subjected it to a tax on materials to be incorporated into the subway structure, is in conflict with the terms of the Compact. We do not agree with this conclusion.

Section 10-204, Art. XVI-78 provides in pertinent part:

"It is hereby declared that the creation of the Authority and the carrying out of the corporate purposes of the Authority *is* in all respects *for the benefit of the people* of the signatory states *and is*

*for a public purpose* and that the Authority and the board will be performing an essential governmental function, including, without limitation, propri-etary, governmental and other functions, in the exercise of the powers conferred by this title. *Accordingly, the Authority* and the board *shall not be required to pay taxes* or assessments *upon any of the property acquired by it* or under its jurisdiction, control, possession or supervision. . . . *This exemp-tion shall include . . . sales tax. . . .*" (Emphasis added.)

The language of this section is plain and unambiguous. It expressly provides an exemption for the Authority from sales tax on property acquired by it to be used for a public purpose.

However, there is no express provision in the Compact granting a similar exemption to contractors from sales tax on materials acquired by them for the Authority. Indeed, there is a provision of the Compact expressly authorizing the signatory states to levy such a tax.

Section 10-203, Art. VII provides in pertinent part:

*"Nothing herein shall be construed to amend, alter, or in any wise affect the power of the signatories* and the political subdivisions thereof *to levy and collect taxes* on the property or income of any person or company subject to this Compact or upon any material, equipment or supplies pur-chased by such person or companies. . . ." (Emphasis added.)

The language of this provision is clear and unambiguous. It expressly states that nothing in the Compact affects the signatory states' power to levy taxes on any material, equip-ment, or supplies purchased by a company subject to the Compact. In essence, this language expressly authorizes Maryland to tax contractors performing construction, repair, or alteration of real property owned by the Authority.

Here, the 1968 Amendment was an exercise of Maryland's power, retained under the Compact, to levy a sales tax on materials purchased by a contractor subject to the Compact. Because Maryland's right to levy such a tax is specifically retained under the Compact, the 1968 Amendment is not in conflict with the express provisions of § 10-204, Art. XVI-78 of the Compact.

Moreover, the principles articulated in *John McShain,* 202 Md. at 72-74, 95 A.2d at 474-75, are inapplicable and do not establish that a contractor subject to the Compact is entitled to an exemption. At the time *John McShain* was decided, Art. 81, § 322 (now Art. 81, § 326) provided in pertinent part:

> "(Exemptions.) The tax hereby levied shall not apply to the following sales:
>
> (a) Sales to the State of Maryland or any of its political sub-divisions.
>
> . . .
>
> (f) Sales which are not within the taxing power of this State under the Constitution of the United States.
>
> . . .
>
> (i) Sales to any person operating a nonprofit religious, charitable, scientific, literary or educational institution or organization situated in this State when such tangible personal property is purchased for use in carrying on the work of such institution or organization."

In *John McShain,* a builder contracted with the federal government (owner) to construct a building to be operated by the National Institutes of Health. The federal government was then exempt from sales tax. Art. 81, § 322 (f). Nevertheless, the builder was required to pay sales tax on materials incorporated in the building. It sought a refund, claiming an exemption on the basis of the purposes of the owner's use as delineated in Art. 81, § 322 (i).

Under this circumstance, the Court of Appeals did not consider an exemption based on the owner's exemption contained in Art. 81, § 322 (f). Rather, it confined its consideration to an exemption based on Art. 81, § 322 (i) and Rule 70 [5] and held that the builder was exempt under Art. 81, § 322 (i). In reaching this conclusion, the Court said:

"The most serious objection to the allowance of the exemption is that the section, in terms, applies to sales made directly to the person operating, and not to a contractor with such person. We think, however, that it would be a strained construction to hold that persons operating the activities mentioned should be entitled to the exemption when they purchase directly from a supplier, but not when they acquire the property through an intermediary contractor. The Comptroller's regulation is very specific on the point, and while it is conceded that the Comptroller lacks the power to create an exemption beyond that granted by the statute, his interpretation is entitled to great weight as an administrative construction acquiesced in by the legislature.

. . .

The controlling factor upon which the exemption is based is not the instrumentality that does the purchasing, but the use of the items purchased in carrying on in Maryland the work to be promoted.

. . .

*The exemption* recognized in the first paragraph *depends upon the use to which the property is put, and not upon the immunity of the user, even though such immunity does not extend to its contractors under other circumstances.* Nor is it material that all activities of the federal government are considered governmental in determining the scope of its immunity, since *the exemption is predicated*

---

5. For the text of then Rule 70, see n.3.

*upon the use and not upon the immunity." John McShain,* 202 Md. at 72-74, 95 A.2d at 474-75 (emphasis added) (citations omitted).

*John McShain* establishes the principle that even in the absence of an express exemption for contractors, a contractor is entitled to an exemption from sales tax on materials incorporated into a building to be used for a nonprofit religious, charitable, scientific, literary, or educational purpose as delineated in Art. 81, § 322 (i). More important, it establishes the principle that the contractor's exemption depends upon the use to which the property is put and not upon the tax-exempt status of the user.

The principles articulated in *John McShain* were explicated in *Steiner Construction Co. v. Comptroller of Treasury,* 209 Md. 453, 458-64, 121 A.2d 838, 840-43 (1956). In *Steiner Construction,* a builder contracted with The Baltimore & Ohio Railroad Company (owner) to make alterations, improvements, or repairs to real property owned by the railroad. It was conceded that sales to railroads were then exempt from sales tax. Nevertheless, the builder was required to pay sales tax on materials incorporated into the job. The builder sought a refund claiming an exemption on the basis of the owner's exemption contained in Art. 81, § 322 (f). No claim was made for an exemption based on Art. 81, § 322 (i).

The Court of Appeals considered Art. 81, § 322 (f), Rule 70, and the principles articulated in *John McShain* and held that the builder was not exempt under Art. 81, § 322 (f). In reaching this conclusion, the Court said:

"The appellant does argue earnestly that the reasoning of the *McShain Case* is applicable to any owner of real estate who or which is exempt from sales and use taxes, regardless of whether the exemption is founded upon sub-section (i) or some other sub-section of what is now Section 322 (formerly 261) of Article 81 of the Code (1951).

As a matter of the construction of the statute we think that the *McShain Case* not only fails to sup-

port, but actually runs counter to, the appellant's contention. *If the immunity from sales and use taxes of the owner of real estate had been the criterion of the exemption of the building contractor, the* McShain Case *could easily have been decided on the basis of sub-section (f) of Section 322 (formerly 261) of Article 81. It was not so decided; on the contrary, the Court relied upon sub-section (i)....* This Court ... upheld the exemption because the use involved fell within sub-section (i), saying, 'We think it is quite immaterial that the activity is conducted by a federal agency, rather than by a private agency or by the State.' Later the Court added, 'The exemption recognized in the first paragraph [of Rule 70] depends upon the use to which the property is put, and not upon the immunity of the user, even though such immunity does not extend to its contractors under other circumstances.'

*In the instant case there is no use comparable to that involved in the* McShain Case. *The exemption relied upon by the appellant is contained in Section 261, paragraph (f)* of Article 81 of the 1947 Supplement to the 1939 Code [1951 Edition, Article 81, Section 322 (f)]. It covers 'Sales which are not within the taxing powers of this State under the Constitution of the United States.' This is no more than an express recognition of the inescapable; it manifests no legislative intent to further the activities of the beneficiaries of this unavoidable exemption. Consequently, there is no such foundation as in the case of charitable or educational institutions for deducing a legislative intent which would support a broad interpretation of the exemption. Likewise, there is no such consideration as might prompt the State to exempt itself or its political subdivisions from paying State taxes.

. . .

The *McShain Case* recognized an exemption which the General Assembly thought it wise to grant. *It might be perfectly logical to carry back realty owners' exemptions to contractors in all cases, but this has not been done, as the* McShain Case *itself shows.* A contention somewhat similar to that of the present appellant along this line was advanced but rejected in *Comptroller v. Joseph F. Hughes & Co., Inc.,* 209 Md. 141, 120 A.2d 343, in which the opinion was filed on the same day that the instant case was argued. In that case contractors doing work for the City of Baltimore and other political sub-divisions of the State of Maryland sought exemption from sales and use taxes on items of personal property purchased to fulfill their contracts with various municipalities, which were consumed in the work and were not incorporated in the finished product. The Court, again speaking through Judge Henderson, there said:

'The appellee argues that the legislative purpose in exempting sales to the State and its political sub-divisions, as well as to charitable and other institutions of the types mentioned, was to enable them to obtain buildings and other property used in their governmental capacity, or for the furtherance of their charitable purposes, at a lower cost, and that purpose would be served by the exemption of expendable items as well as of items that survive the completion of the structures. This may be true, but in construing tax statutes the courts do not now attach much weight to arguments based on the economic incidence of the tax. That same argument might be made as to items which go into the contractor's inventory as a part of his capital assets or equipment, and suffer deterioration and depreciation during the progress of the work. In any event it is a matter of legislative policy as to where the line should be drawn.' " *Steiner Construction,* 209 Md. at 460-64, 121 A.2d at 840-43 (emphasis added) (citation omitted).

*Steiner Construction* establishes that the principles articulated in *John McShain* are limited in application to claims made on the basis of the purpose of the owner's use as delineated in Art. 81, § 322 (i) and not on the basis of the owner's exemption under other sections such as Art. 81, § 322 (f).

Here the contractor claims an exemption based on § 10-204, Art. XVI-78 of the Compact which provides that because the Authority was created for a public purpose, it should not be required to pay taxes on property acquired by it. It is, therefore, unclear whether in analogizing to *John McShain* the contractor claims an exemption on the basis of the Authority's tax-exempt status or on the basis of the purpose of the use.

However, the contractor's contention that it is the 1968 Amendment to Art. 81, § 326 (a) which deprives it of tax-exempt status makes it plain that in analogizing this case to *John McShain,* the contractor's claim is based on the Authority's tax-exempt status under Art. 81, § 326 (a) (formerly Art. 81, § 322 (a)) rather than the purpose of the use as delineated in Art. 81, § 326 (i) (formerly Art. 81, § 322 (i)). Under these circumstances, the principles of *John McShain* do not apply. *Steiner Construction,* 209 Md. at 460-62, 121 A.2d at 841.

This case cannot be analogized to *John McShain* for yet another reason. Article 81, § 322 (now Art. 81, § 326), the section of the Retail Sales Act construed in *John McShain,* contained no express provision concerning the tax status of contractors performing construction, repair, or alteration of real property for the State of Maryland. Here a section of the Compact, § 10-204, Art. XVI-78, is being construed. The Compact, however, contains an express provision, § 10-203, Art. VII, which, as set forth above, authorizes Maryland to tax contractors performing such work for the Authority. For this reason, too, the principles of *John McShain* do not apply.

Finally, even if the principles of *John McShain* were applicable, the contractor here would not be entitled to an exemption. Maryland is expressly authorized by the plain language of § 10-203, Art. VII of the Compact to amend

its laws unilaterally in order to tax contractors performing work for the Authority. Therefore, even if, at the time of the adoption of the Compact in 1965, § 10-204, Art. XVI-78 provided a tax exemption for a contractor subject to the Compact, Maryland would, nonetheless, have the authority under § 10-203, Art. VII to subsequently abolish that exemption.

In sum, it is immaterial whether the principles of *John McShain* are applicable. Because Maryland is expressly authorized by the plain language of § 10-203, Art. VII of the Compact to tax contractors performing construction, repair, or alteration of real property owned by the Authority, the 1968 Amendment to Art. 81, § 326 (a) which imposed such a tax is not in conflict with the Compact.[6] The contractor is not entitled to a sales tax refund.[7] Accordingly, we shall affirm.

*Judgment affirmed.*
*Costs to be paid by petitioner.*

---

[6.] Delaware River & Bay Auth. v. Carello, 43 Del. Ch. 213, 220-21, 222 A.2d 794, 799 (1966), relied on by the contractor is inapposite. There, unlike here, a unilaterally enacted statute was in conflict with an express provision of a Compact.

[7.] In view of this decision, we need not consider the contractor's contention that, in determining whether the contractor is entitled to a refund, it is immaterial whether the contractor "bore the burden of the tax or shifted it to others."